# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | | |
|---|---|---|
| United States of America<br>v.<br><br>Conrad Jones Jr.<br><br>*Defendant(s)* | ) ) ) ) ) ) ) | Case No. 1:23MJ505-1 |

**FILED**
in the Middle District of North Carolina
**December 6, 2023**
**4:35 pm**
Clerk, US District Court
By: _____dmk_____

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **December 5, 2023** in the county of **Forsyth** in the **Middle** District of **North Carolina**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 USC, Section 2114 | Robbery of Mail, Money, or Other Property of the United States. |
| Title 18 USC, Section 922(g)(1) | Possession of firearm by felon. |
| Title 18 USC Section 924(c)(1)(A) | Firearm in furtherance of a Crime of Violence. |

This criminal complaint is based on these facts:
See Affidavit

☑ Continued on the attached sheet.

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Criminal Complaint and attached affidavit in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 12/06/2023 3:53 pm

City and state: Durham, North Carolina

/S/ Eli VanKuren
*Complainant's signature*

Eli VanKuren, ATF Task Force Officer
*Printed name and title*

[signature]
*Judge's signature*

Honorable Joe L. Webster U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# CRIMINAL COMPLAINT AND ARREST WARRANT

I, Eli VanKuren, a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) being duly sworn according to law, depose and state as follows:

## AFFIANT'S EXPERIENCE

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. Your Affiant is a Police Officer for the Winston-Salem Police Department (WSPD) and has been so employed since August 2015. Your Affiant is a graduate of the North Carolina Basic Law Enforcement Training taught by the Winston-Salem Police Department. Your Affiant is also duly sworn as a Task Force Officer for Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Your Affiant holds a Bachelor's degree in Psychology from Harding University. During your Affiant's career in Law Enforcement, your Affiant has participated in multiple advanced training including the North Carolina Police Law Institute, Basic Gang Investigations, Violent Criminal

Apprehension Techniques, Narcotics and Interdiction techniques, and Basic Cell Phone Investigations among others.

3. Your Affiant has conducted and assisted with numerous investigations involving the commission of violent crimes, such as shootings, aggravated assaults, robberies, etc. Through instruction, training, experience, participation in investigations, and the exchange of information with other law enforcement agents and officers, your Affiant has become familiar with the manner in which people commit violent acts and the methods, language, and terms that are used to further their criminal activities.

4. Your Affiant has participated in a number of firearms trafficking, manufacturing, and illegal possession cases. My training and experience in the investigation of the illegal possession and trafficking of firearms has provided me with information concerning the normal patterns and procedures through which individuals acquire, store, maintain, and/or manufacture firearms. I have had discussions with senior ATF agents with sufficient experience and/or expertise in conducting investigations related to individuals who unlawfully possess and traffic in firearms. As a result of my own personal experiences, the training I have received, and the information that I have obtained from working with experienced ATF agents, I am familiar with violations of Federal Firearms Laws.

5. Your Affiant has participated in a number of narcotics trafficking and possession cases. Your Affiant's training and experience in the investigation of the illegal possession and trafficking of narcotics has provided your Affiant with information concerning the normal patterns and procedures through which individuals acquire, store, maintain, and/or manufacture narcotics. Through instruction, training, experience, participation in investigations, and the exchange of information with other law enforcement agents and officers, your Affiant has become familiar with the manner in which people use and distribute narcotics and the methods, language, and terms that are used to further their criminal activities.

6. As a result of your Affiant's training and experience, your Affiant is familiar with the Federal Criminal Codes, including:

    a. *18 U.S.C. § 2114*, Robbery of Mail, Money, or Other Property of the United States.

    b. *18 U.S.C. § 922(g)(1),* Possession of firearm by felon.

    c. *18 U.S.C. § 922(g)(3),* Possession of firearm by unlawful drug user.

    d. *18 U.S.C. § 924(c)(1)(A)(i),* Possession of a firearm in furtherance of a Crime of Violence.

## PURPOSE OF AFFIDAVIT

7. This affidavit is made in support of an application for a criminal complaint for Reginald Tyrone GOLDSMITH, III (GOLDSMITH) and Conrad JONES, JR. (JONES).

8. Your Affiant has probable cause to believe that on December 5, 2023, GOLDSMITH and JONES did commit a Robbery of Mail, Money, or Other Property of the United States; that GOLDSMITH and JONES did possess a firearm in furtherance of a crime of violence; that GOLDSMITH committed the offense of possession of a firearm by a unlawful drug user, and that JONES committed the offense of possession of a firearm by a felon.

## THE INVESTIGATION – FACTUAL BACKGROUND

9. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, your Affiant has not included each and every fact known to your affiant concerning this investigation. Your Affiant has set forth facts that he believes are necessary to establish probable cause of violation of federal criminal offense,

## PROBABLE CAUSE

10. On December 1, 2023, an ATF Confidential Informant "CI"[1] began communicating with a Facebook user by the name of "Rudeboii Gremlin" who

---

[1] The CI was compensated for his/her services and has a criminal history that includes felony convictions.

4

posted a Facebook story relating to the sale of two firearms. The user of the account was suspected to be GOLDSMITH.

11. The conversation continued and the CI was provided GOLDSMITH's telephone number of XXX-XXX-7926. The CI and GOLDSMITH continued to communicate and arranged for GOLDSMITH to sell the firearms to the ATF CI for one thousand, three hundred dollars ($1,300) on December 5, 2023.

12. On December 5, 2023, the ATF CI continued to communicate with GOLDSMITH and confirmed the purchase of the aforementioned firearms. Prior to the sale, the ATF CI was searched, along with the ATF CI's vehicle, which yielded no contraband, nor currency. TFO VanKuren provided the ATF CI pre-recorded ATF Agent Cashier funds in the amount of $1,300.00 as seen below:



13. The agreement was made to purchase the firearms from GOLDSMITH, as depicted below:



6

14. Through communications with GOLDSMITH, it was determined the sale would take place at 900 East Third Street, Winston-Salem, NC.

15. TFO VanKuren and TFO LaValley followed the ATF CI from the staging location to the area of 900 East Third Street. Upon arrival, the ATF CI parked along the curb line of the street. The ATF CI contacted GOLDSMITH to inform GOLDSMITH the CI was present.

16. GOLDSMITH approached the ATF CI vehicle accompanied with another individual, later identified as Conrad JONES. GOLDSMITH and the ATF CI exchanged greetings through the front passenger side window. After the greetings, GOLDSMITH entered the ATF CI's vehicle and sat in the front passenger seat. After the ATF CI told GOLDSMITH he had the money, GOLDSMITH instructed JONES to get into the rear passenger seat.

17. GOLDSMITH removed a Glock handgun with a black frame and a gold slide with an extended magazine from a black bag. GOLDSMITH removed the extended magazine from the firearm and handed it to the ATF CI. The ATF CI handled the magazine and subsequently handed it back to GOLDSMITH.

18. GOLDSMITH took the magazine and placed it in the firearm. This occurred while the ATF CI was counting the Agent Cashier funds. Once the currency was counted by the ATF CI, GOLDSMITH put out his hand expecting the ATF CI to provide him the money. At that time, the ATF CI said they would trade the money for the firearm.

7

19. GOLDSMITH pointed the firearm at the ATF CI and then grabbed the $1,300.00 in Agent Cashier Funds from the ATF CI.



20. As GOLDSMITH was taking the money, he stated, "You beat nigga." The ATF CI said, "Don't rob me, don't rob me."

21. Simultaneously, JONES, who was in the backseat, pointed a firearm at the head of the ATF CI.

22. GOLDSMITH and JONES exited the ATF CI vehicle. JONES was still pointing the firearm at the ATF CI. JONES and GOLDSMITH fled as law enforcement converged in the area.



23. As law enforcement officers converged, firearms were being discharged by the fleeing suspects[2]. Law enforcement located GOLDSMITH

---

[2] At this point in the investigation, it is unclear if GOLDSMITH and JONES were discharging their firearms at law enforcement.

9

and JONES and detained them within minutes of the robbery and within approximately 300 feet or less of the site of the CI buy. JONES and GOLDSMITH were noted to be wearing the same clothing as reflected in the video of the robbery.

24. TFO VanKuren and LaValley located the ATF CI and followed the ATF CI from the scene to the staging location. The ATF CI was not injured and following the incident was searched, along with the ATF CI's vehicle, which yielded no contraband nor currency.

25. A Glock Model 45 (S/N: BTUF167) with a black frame and a gold slide and a Bersa Thunder 380 ACP (S/N: K75349) were located along the path of flight taken by JONES and GOLDSMITH. The Glock was consistent with the firearm held by GOLDSMITH and with the photograph that had been previously sent to the ATF CI.

26. ATF Special Agent Newsome, an expert in the area of interstate nexus of firearms, determined that both the Glock Model 45 (S/N: BTUF167) and the Bersa Thunder 380 ACP (S/N: K75349) were manufactured outside the state of North Carolina, and therefore, travelled in interstate commerce.

27. Winston-Salem Police Department responded and processed the crime scene. During the processing, spent 9mm shell casings and spent .380 shell casings were recovered. This indicates both firearms possessed by GOLDSMITH and JONES were discharged as law enforcement converged, and

GOLDSMITH and JONES fled after taking the Agent Cashier Funds from the ATF CI.

28. Upon querying the firearms serial numbers, it was discovered that the Bersa Thunder, S/N: K75349, firearm was reported stolen to the Rockingham County Sheriff's Office on July 16, 2022.

29. JONES is a previously convicted felon for Possession of Stolen Motor Vehicle, for which he received a sentence of 4-14 months. JONES is currently on supervised probation, as a result of that offense. and was wearing an ankle monitor as a condition of his probation.

30. GOLDSMITH was eventually transported to the WSPD Public Safety Center where he was provided his *Miranda* rights, and waived them, and was interviewed by WSPD Detectives.

31. GOLDSMITH initially claimed he was smoking a "blunt" which is slang for a marijuana cigarette, on the front porch of his aunt's apartment when he heard the gunshots and saw individuals running. GOLDSMITH later admitted to attempting to sell a firearm to an individual who had messaged him.

32. GOLDSMITH admitted he was "texting brah" (referring to the ATF CI) trying to sell a firearm. GOLDSMITH admitted that the gun he was attempting to sell was the gold and black Glock 9mm handgun recovered from the incident scene. GOLDSMITH claimed the ATF CI attempted to take the

11

firearm from him, so he exited the vehicle and observed a car coming towards them at a high rate of speed. GOLDSMITH believed this vehicle was "ops," referring to rival gang members, when in fact it was law enforcement. GOLDSMITH claimed that as he fled, thinking this vehicle was rival gang members, he began discharging his firearm in the air.

33. During the interview, GOLDSMITH stated he was going through drug withdrawals. GOLDSMITH stated he took the money "to go buy something I need," and stated that he needed to go to rehab. When asked what he was addicted to, GOLDSMITH responded that he was taking "Perk30," referring to 30mg Percocet that has been cut with heroin. GOLDSMITH stated, "I think I should go to rehab first, and then go to jail." GOLDSMITH was asked about his heroin use. He admitted to snorting heroin every day for a month or two. He further admitted to using "a lot every day" and specified he used a "ball," which is a common term for 3.5 grams.

34. During the interview, GOLDSMITH ultimately admitted to attempting to sell two firearms. When asked how he obtained them, GOLDSMITH stated he bought the .380 off the street. He traded another firearm (a Taurus) and cocaine for the Glock 45. GOLDSMITH later changed the details of the trade to $20 and another firearm. GOLDSMITH claimed he had the Glock for only a couple of days prior to the incident.

35. GOLDSMITH denied taking the Agent Cashier funds during the interview. However, upon arriving at the Guilford County Jail during the intake process, a thorough search was conducted of GOLDSMITH, which yielded $1,300.00 being located in an inner pants pocket of GOLDSMITH. TFO VanKuren compared the serial numbers of the pre-recorded Agent Cashier funds to that of the currency found on GOLDSMITH and confirmed this was the Agent Cashier funds. Photographed below:



36. On December 6, 2023, ATF TFO VanKuren contacted the North Carolina Governor's Clemency Office in reference to JONES' pardon status. It was confirmed that JONES has not received nor applied for a pardon. Therefore, JONES' Second Amendment Right to possess a firearm or ammunition has not been restored.

13

## CONCLUSION

37. Based on the foregoing facts, your affiant respectfully submits that there is probable cause to believe that on December 5, 2023, within the Middle District of North Carolina, Reginald Tyrone GOLDSMITH, III and Conrad JONES, JR. committed the following criminal offenses: assault of a person having lawful charge, control, or custody of any money or other property of the United States, with the intent to rob, steal, or purloin such money or other property, in violation of 18 U.S.C. § 2114(a), and Possession of a Firearm in furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Further, that on December 5, 2023, within the Middle District of North Carolina, Reginald Tyrone GOLDSMITH, III did possess a Glock, Model 45, 9mm handgun while being an unlawful user of a controlled substance, as defined in 21 U.S.C. § 802, in violation of 18 U.S.C. § 922(g)(3). Additionally, Conrad JONES Jr. on December 5, 2023, within the Middle District of North

Carolina, Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1).

/S/ Eli VanKuren
Eli VanKuren, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Dated: December 6, 2023 at 3:53 p.m.
Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

_____
Honorable Joe L. Webster
United States Magistrate Judge
Middle District of North Carolina